ELECTRONIC CITATION: 14 FED App. 0001P (6th Cir.)
File Name: 14b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: DEAN R. BRADLEY; CYNTHIA E. BRADLEY, | ) | |
| | ) | |
| Debtors. | ) | |
| ──────────────────────────── | ) | |
| | ) | |
| KRAUS ANDERSON CAPITAL, INC., | ) | |
| | ) | No. 13-8010 |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEAN R. BRADLEY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| ──────────────────────────── | | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Akron.
No. 10-55621; Adv. No. 11-5082.

Submitted: November 5, 2013

Decided and Filed: March 26, 2014

Before: GEORGE W. EMERSON, Jr., GUY R. HUMPHREY and C. KATHRYN PRESTON,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Joseph A. Wentzell, WENTZELL LAW OFFICE, PLLC, St. Anthony, Minnesota, for
Appellant. Michael J. Moran, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellee.

_____

**OPINION**

_____

**GEORGE W. EMERSON, Jr.**, Bankruptcy Appellate Panel Judge.

Kraus Anderson Capital, Inc. ("Lender") appeals the decision of the Bankruptcy Court determining that the debt owed by Dean R. Bradley ("Debtor") is dischargeable. The adversary complaint asserted causes of action under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) based on Lender's claim that Debtor's failure to remit the proceeds of the sale of collateral in breach of the terms of certain agreements and his false representations regarding the status of the collateral render the debt non-dischargeable. Lender also appeals the Bankruptcy Court's decision denying its motion to amend and make additional findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052. For the reasons set forth below, the Panel REVERSES the decision of the Bankruptcy Court holding the debt owed to Lender dischargeable and REMANDS for a determination regarding the amount of damages.

## I.   ISSUES ON APPEAL

Appellant presents two issues in this appeal. The primary issue is whether the Bankruptcy Court erred in determining that the debt owed to Lender should be held dischargeable in bankruptcy. The second issue is whether the Bankruptcy Court erred in denying Lender's motion to amend or make additional findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A "final" order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves

nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 797, 109 S. Ct. 1494, 1497 (1989) (internal quotations and citations omitted). Determinations of dischargeability are final orders for purposes of appeal. *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp.* (*In re Hertzel*), 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

Dischargeability determinations present mixed questions of law and fact. *Hogan v. George* (*In re George*), 485 B.R. 478, 2013 WL 135274, at *1 (B.A.P. 6th Cir. 2013) (table). When a mixed question of law and fact arises in the bankruptcy context, the reviewing court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Bank of Montreal v. Official Comm. of Unsecured Creditors* (*In re Am. Homepatient, Inc.*), 420 F.3d 559, 563 (6th Cir. 2005) (citations omitted). The appellate court reviews conclusions of law *de novo* and factual determinations are reviewed under a clearly erroneous standard. *Van Aken v. Van Aken* (*In re Van Aken*), 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005). "Under a *de novo* standard of review, the appellate court must 'review questions of law independent of the bankruptcy court's determination.' " *Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 482 (B.A.P. 6th Cir. 2010) (citing *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000)). "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation marks and citation omitted).

Contract interpretation is a matter of law which is reviewed *de novo*. *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012); *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). The determination of whether a contract, or a term therein, is clear or ambiguous is also a question of law reviewed *de novo*. *Official Comm. of Unsecured Creditors v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 456 F.3d 668, 676 (6th Cir. 2006).

The Panel reviews the denial of a motion to amend or make additional findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052 under the abuse of discretion standard.

*Besser v. Sepanak*, 478 Fed. Appx. 1001 (6th Cir. 2012).

> Abuse of discretion exists when the court " 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.' " *Corzin v. Fordu* (*In re Fordu*), 209 B.R. 854, 858 (6th Cir. BAP 1997) (citation omitted). If a trial court's decision determining dischargeability is based on the correct law and facts, the court has not abused its discretion in denying a party's motion to amend or make additional findings of fact.

*Lowry v. Nicodemus* (*In re Nicodemus*), 497 B.R. 852, 855 (B.A.P. 6th Cir. 2013).

## III. FACTS

On November 30, 2010, Debtor and his wife Cynthia E. Bradley, filed a joint petition for relief under chapter 7 of the Bankruptcy Code. Debtor owns Bradley Machinery, LLC ("Bradley Machinery"), which was in the business of selling and renting construction equipment. Bradley Machinery did not file a bankruptcy petition.

On March 21, 2011, Lender filed an adversary proceeding against Debtor pursuant to § 523(a)(4) and (a)(6). Lender asserts Debtor caused Bradley Machinery to sell equipment "out of trust," that is, without remitting the proceeds of the sale of collateral to Lender. Lender argues this constituted embezzlement under § 523(a)(4) and was a willful and malicious injury under § 523(a)(6). Lender subsequently amended its complaint to add a cause of action under § 523(a)(2)(A). The § 523(a)(2)(A) cause of action is based on a settlement agreement reached by the parties after the sale of some equipment "out of trust." Lender asserts that Debtor obtained an extension of credit through false representations to Lender regarding the status of certain pieces of its collateral. *Kraus-Anderson Capital, Inc. v. Bradley* (*In re Bradley*), Adv. Case No. 11-05082, ECF. Nos. 36, 43.[1]

---

[1]All references to docket entries are references to the Bankruptcy Court's electronic case docket for adversary proceeding no. 11-5082. All transcript references are to the trial conducted on August 10, 2012. References to exhibits are the exhibits admitted at trial.

Prior to trial, Lender and Debtor filed three separate stipulations of fact. The facts stipulated by the parties are as follows:

> Defendant owns Bradley Machinery, LLC ("Bradley Machinery").
>
> Plaintiff and Bradley Machinery entered into various loan and security agreements . . . whereby Plaintiff provided financing for Bradley Machinery's purchase of equipment used in Bradley Machinery's business. The equipment purchased with the financing from Plaintiff was subject to security interests in favor of Plaintiff.
>
> Defendant personally guaranteed the performance of Bradley Machinery's obligations under the Loan Documents pursuant to a written guaranty dated January 27, 2005.
>
> In the spring of 2008, Bradley Machinery's bank required a modification to the terms [of a loan] and an increase in the monthly payment amount of Bradley Machinery's loan, which caused cash flow problems for Bradley Machinery.
>
> By the summer of 2008, Bradley Machinery was unable to pay its bills in the ordinary course of business and did not reveal this information to Plaintiff.

Second Joint Stipulations, ¶ 4-8, ECF No. 35.

> In December 2008, Defendant met with Plaintiff's representatives, Carl Carlson and James Stephen Jarussi, in Defendant's offices, and at that meeting Defendant informed Plaintiff that he had caused Bradley Machinery to sell certain equipment subject to Plaintiff's security interest but did not pay the proceeds to Plaintiff. Defendant did not at that time disclose that three other pieces of equipment subject to Plaintiff's security interests had been sold.

Second Joint Stipulations, ¶ 10, ECF No. 35.

> Within weeks after meeting with Plaintiff's representatives and signing the Amendment to the Loan Documents, Defendant caused Bradley Machinery to sell equipment subject to Plaintiff's security interests without paying the proceeds to Plaintiff.

Second Joint Stipulations, ¶ 13, ECF No. 35.

> Bradley Machinery sold or caused to be sold the following equipment subject to Plaintiff's security interest:

2007 Gehl Skid Loader, Model 6640E, S/N 606828

2007 Gehl Skid Loader, Model CTL70, S/N 405302

Bobcat T190 Loader, S/N 527717582

Yanmar Vio45, S/N 50616

Yanmar Vio45, S/N 50712

Yanmar Vio35, S/N 51695

Yanmar Vio35-5, Komac Hammer KB300SL

Upon the sale of such equipment, the obligations to Kraus Anderson secured by the equipment were not paid in full.

Second Joint Stipulations, ¶ 18, ECF No. 35; *See also* Ex. 29-4, Equip. List.

Defendant knows the equipment was sold because he helped sell it.

Second Joint Stipulations, ¶ 19, ECF No. 35.

Defendant knew that Bradley Machinery and Defendant himself were experiencing financial problems when he sold the equipment.

Second Joint Stipulations, ¶ 22, ECF No. 35.

A Settlement Agreement ("Settlement Agreement") was agreed to in December 2008 and entered into between Plaintiff, Bradley Machinery, and Defendant on March 27, 2009.

Second Joint Stipulations, ¶ 15, ECF No. 35; Ex. 29.

As part of the Settlement Agreement, Bradley Machinery and Defendant executed a Confession of Judgment, which authorized Plaintiff to enter judgment against Bradley Machinery and Defendant in the amount of $308,828.12 or the portion of that amount that remains unpaid if Bradley Machinery and Defendant default in any payment [of the monthly installments] due under the Settlement Agreement.

Second Joint Stipulations, ¶ 16, ECF No. 35; Ex. 29-11, Confession of Judgment.

The Settlement Agreement covered all outstanding amounts owed for all equipment for which Plaintiff provided financing for Bradley Machinery to purchase.

Third Joint Stipulations, ¶ 3, ECF No. 50.

The total outstanding amounts owing for all equipment for which Plaintiff provided financing for Bradley Machinery to purchase as of January 23, 2009 was $232,512.99.

Third Joint Stipulations, ¶ 4, ECF No. 50.

In 2010, Defendant met with Plaintiff's auditors, Quiktrak, for the purpose of verifying the location of equipment subject to Plaintiff's security interests. Defendant lied to the auditors about the location of three pieces of equipment, and failed to tell them that the equipment had already been sold and was no longer in his possession or under his control. Defendant instead told the auditors that the equipment was leased and at certain job sites. Defendant knew that Plaintiff would rely on the information he provided to Plaintiff's auditors.

Second Joint Stipulations, ¶ 17, Docket No. 35.

A trial was held in the adversary proceeding on August 10, 2012. In addition to the three Joint Stipulations of Fact filed by Lender and Debtor, the parties presented the testimony of Debtor and James Stephen Jarussi, the vice president and representative of Lender. During the trial, Lender and Debtor also stipulated to the admission of thirty-three exhibits, including but not limited to the following: Guaranty dated January 27, 2005 (Ex. 1); Dealer Credit Agreement (Ex. 2) and Promissory Note dated June 16, 2006 (Ex. 3); Promissory Notes and Security Agreements for Gehl loaders (Ex. 4) and a Bobcat loader (Ex. 10); Settlement Agreement dated March 27, 2009 (Ex. 29); List detailing status of equipment as of January 31, 2009 (Ex. 29A); Confession of Judgment dated March 27, 2009 (Ex. 29C); QuikTrak audit invoice dated November 12, 2010 (Ex. 31); History of contacts by Lender with Bradley Machinery from December 13, 2005 through January 18, 2011 (Ex. 32); Email correspondence between Debtor and Lender dated April 2010 (Ex. 33). At the conclusion of trial, the parties were ordered to file written closing arguments by August 24, 2012. Debtor filed a post-trial brief and Lender filed its closing argument and findings of fact.

On February 5, 2013, the Bankruptcy Court issued a memorandum opinion and order holding that Lender had failed to show that the debt was nondischargeable. On February 19, 2013, Lender filed a motion to amend and make additional findings of fact and conclusions of law and to alter, amend, or vacate judgment entered on February 6, 2013. Debtor filed an objection. After consideration of Lender's motion and Debtor's objection, the Bankruptcy Court denied the motion in an order dated March 6, 2013. Lender timely filed this appeal.

## IV. DISCUSSION

Two of the counts of the complaint are based on Debtor's actions[2] prior to the Settlement Agreement. Lender asserts that under the terms of the Dealer Credit Agreement and Promissory Note, Debtor was required to remit proceeds from the sales of equipment. Lender asserts that Debtor's action of selling equipment "out of trust" constitutes embezzlement and is non-dischargeable under § 523(a)(4) and is also a non-dischargeable willful and malicious injury under § 523(a)(6). Debtor admitted that he sold the equipment "out of trust" but asserts that the debt is dischargeable. Amended Ans. to Complaint, ¶ 6, ECF No. 10; August 10, 2012 Trial Tr. 225:7-11, ECF No. 74.

---

[2] There is no dispute that Debtor was the person who acted on behalf of Bradley Machinery and committed the torts creating the nondischargeable debt. A debtor acting on behalf of a corporation, who actively converts property or commits any other tort giving rise to a nondischargeable debt under § 523 is personally responsible to the injured party and the debt is nondischargeable under § 523. *See Ford Motor Credit Co v. Owens*, 807 F.2d 1556, 1559 (11th Cir. 1987); *Eaton v. Ford Motor Credit Co., LLC*, 2012 WL 3579644, at *3 (M.D. Tenn. Aug. 16, 2012); *First American Title Ins. Co. v. Gaskill (In re Gaskill)*, 480 B.R. 291, 300 (Bankr. W.D. Mich. 2012); and *Bombardier Corp. v. Penning (In re Penning)*, 22 B.R. 616, 619 (Bankr. E.D. Mich. 1982). Thus, because Debtor was the person who made the representations to Lender and carried out the acts giving rise to the non-dischargeable debt, for purposes of the nondischargeability determinations, it makes no difference as to whether those acts are viewed as having been taken in his individual capacity or as an officer of the corporation. For this reason, the decision will refer to Debtor and Bradley Machinery interchangeably without differentiating between them.

A.	11 U.S.C. § 523(a)(4)

Under 11 U.S.C. § 523(a)(4), a debt is not dischargeable if it was incurred by embezzlement. Lender argues that "Debtor's sale of the equipment subject to [Lender's] security interest and retention and use of the sale proceeds constitutes embezzlement." Plaintiff's Closing Arg. ¶ 36, ECF No. 60. "A creditor proves embezzlement by establishing that (1) he entrusted his property to the debtor or debtor lawfully obtained the property, (2) the debtor appropriated the property for a use other than that for which it was intended, and (3) the circumstances indicate fraud." *Robinson v. Robinson* (*In re Robinson*), 2012 WL 4715093, at *4 (Bankr. N.D. Ohio Oct 1, 2012) (citing *Brady v. McAllister*, 101 F.3d 1165, 1173 (6th Cir. 1996)). *See also Fox*, 370 B.R. at 115-16; *Peavey Elec. Corp. v. Sinchak (In re Sinchak)*, 109 B.R. 273, 276 (Bankr. N.D. Ohio 1990).

The first prong of an "embezzlement claim requires a showing that the property, allegedly embezzled by the defendant, was the property of the plaintiff." *Fla. Outdoor Equip., Inc. v. Tomlinson* (*In re Tomlinson*), 220 B.R. 134, 136 (Bankr. M.D. Fla. 1998). In this case, the property which Lender accuses Debtor of embezzling is the proceeds arising from the sale of equipment subject to Lender's security interest.

Many courts have held "a mere lien or security interest does not rise to the level of ownership sufficient to support a claim under § 523(a)(4)'s embezzlement provision." *Hulsing Hotels Tenn., Inc. v. Steffner* (*In re Steffner*), 479 B.R. 746, 766 (Bankr. E.D. Tenn. 2012). *See also First Nat'l Bank of Fayetteville v. Phillips* (*In re Phillips*), 882 F.2d 302, 304–05 (8th Cir. 1989); *Mutual Mgmt. Servs., Inc. v. Fairgrieves* (*In re Fairgrieves*), 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010); *Morganroth & Morganroth, PLLC v. Stollman* (*In re Stollman*), 404 B.R. 244, 272-73 (Bankr. E.D. Mich. 2009); *Bank of Castile v. Kjoller* (*In re Kjoller*), 395 B.R. 845, 851 (Bankr. W.D.N.Y. 2008); *Banco Popular, N. Am., v. Rodriguez* (*In re Rodriguez*), 2007 WL 543750, at *5–6 (Bankr. S.D. Tex. Feb. 15, 2007); *Calumet v. Whiters* (*In re Whiters*), 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006); *Bombardier Capital, Inc. v. Tinkler* (*In re Tinkler*), 311 B.R. 869, 877 (Bankr. D. Colo. 2004); *Everwed Co. v. Ayers* (*In re Ayers*), 25 B.R. 762, 774-75 (Bankr. M.D. Tenn. 1982).

This Panel agrees with this line of cases. "As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself." *Deere & Co. v. Contella (In re Contella)*, 166 B.R. 26, 30 (Bankr. W.D.N.Y. 1994).[3]

Neither the Bankruptcy Court nor either party addressed the issue of whether the proceeds of the sale of collateral were "property" of Lender for purposes of § 523(a)(4). However, "the bankruptcy court's decision . . . may be affirmed on any grounds supported by the record." *Montedonico v. Beckham (In re Beckham),* 421 B.R. 602, 2009 WL 1726526, at *7 (B.A.P. 6th Cir. 2009) (table). *See also Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1494 (5th Cir. 1993); *Phillips*, 434 B.R. at 488 (Rhodes, J., concurring). Accordingly, the Panel AFFIRMS the Bankruptcy Court's conclusion that the elements of § 523(a)(4) are not met.

B.      11 U.S.C. § 523(a)(6)

Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable if it is due to a willful and malicious injury. Lender argues that "[Debtor's] sale of the equipment subject to [Lender's] security interest and retention and use of the sales proceeds were willful and malicious." Plaintiff's Closing Arg. ¶41, ECF No. 60. The Supreme Court has explained that for a debt to be non-dischargeable under § 523(a)(6), the " 'actor [must] intend 'the consequences of an act,' not simply 'the act itself.' " *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998) (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)). The Sixth Circuit Court of Appeals has further qualified that a willful and malicious injury occurs only if the debtor (1) desires "to cause the consequences of his act, or" (2) "believes those consequences are substantially certain to result from it." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

---

[3] The Panel acknowledges a line of cases holding "that a debtor commits an embezzlement under section 523(a)(4) when the debtor sells mortgaged property and fails to remit the proceeds to a properly perfected, secured creditor or consignor." *Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003). However, those cases typically involve a duty to segregate proceeds of the sale of collateral subject to a security interest. *See Tomlinson*, 220 B.R. at 136. There is no evidence of a duty to segregate proceeds in the present case.

In reviewing the Bankruptcy Court's determination whether Lender suffered an injury and whether the injury to Lender was willful and malicious for purposes of § 523(a)(6), the Panel applies the clearly erroneous standard.

> "The clearly erroneous standard does not permit this Panel to substitute its assessments of credibility in place of the explicit findings made by the bankruptcy court." *In re Forbes*, 372 B.R. at 334. As long as the bankruptcy court's findings are "reasonable and supported by the evidence," the Panel may not overturn them. *Id.* (quoting *DuVoisin v. Foster* (*In re S. Indus. Banking Corp.*), 809 F.2d 329, 331 (6th Cir.1987)).

*Phillips*, 434 B.R. at 484.

### 1. Willful

> In the context where a debtor has converted a creditor's collateral, it has been held . . . that the 'willful' requirement of 523(a)(6) may be indirectly established by the creditor demonstrating the existence of two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights.

*Takacs v. Ruderson* (*In re Ruderson*), 2007 WL 4570581, at *6 (Bankr. N.D. Ohio Dec. 20, 2007) (quoting *J & A Brelage, Inc. v. Jones* (*In re Jones*), 276 B.R. 797, 802 (Bankr. N.D. Ohio 2001), citing *Mitsubishi Motors Credit of Am., Inc. v. Longley* (*In re Longley* ), 235 B.R. 651, 657 (B.A.P. 10th Cir.1999)).

The Bankruptcy Court did not address Debtor's knowledge of Lender's lien rights because it found that Debtor was not required to turn over the proceeds of the sale of the collateral. This legal conclusion requires an analysis of the contract. It is a question of law reviewed *de novo*.

In footnotes, the Bankruptcy Court dismissed the role of the Dealer Credit Agreement and the Promissory Note dated June 16, 2006, each of which contain clauses requiring Debtor to remit the proceeds of sales of collateral to Lender. The Bankruptcy Court stated that "the court is not convinced that the Dealer Creditor Agreement has any significant relation to the individual security

agreements and notes. Kraus Anderson representative Mr. Jarussi's testimony suggested that he himself was unsure about the relationship." Feb. 5, 2013, Op. at 9, n.1, ECF No. 61.

A review of the trial transcript reveals that Mr. Jarussi was not at all unsure about the relationship. "There is no conflict in my mind. The overriding document is the dealer credit agreement." August 10, 2012, Trial Tr. 119:1-2, ECF No. 74. Mr. Jarussi explained that the Promissory Note attached to the Dealer Credit Agreement includes everything Debtor financed. It represented a revolving line of credit on which the borrower, Bradley Machinery, could (and did) draw to purchase pieces of equipment. Each individual purchase of a piece of equipment was also represented by individual schedules, security agreements, and notes under the line of credit. Tr. 133:10-22. Several times Mr. Jarussi explained that the Promissory Note attached to the Dealer Credit Agreement was a fluid or floating line of credit, with collateral coming in and going out. Tr. 139:21-24; 141:20-25. He explained that the other notes were all part of the line of credit under the Dealer Credit Agreement. Tr. 142:6-12; 145:6-11. He consistently testified that the Dealer Credit Agreement was "umbrella financing" (Tr: 132:4-6) and that the Promissory Note (Ex. 3) was a credit line limit and it spelled out the rules of the relationship. Tr. 150:15-19. Finally, he explained that if he needed to enforce the transactions with Bradley Machinery he would use the Dealer Credit Agreement, Promissory Note, subsequent notes and security agreement(s).

Examination of the documents support Mr. Jarussi's explanation of the financing arrangement. Paragraph 3 of the Dealer Credit Agreement provides in part:

> As long as Borrower is not in default, Borrower may sell any item of Collateral in the ordinary course of Borrower's business for a price not less than the Advance made for such item of Collateral, unless otherwise agreed to in writing by Lender, provided Borrower pays Lender any amounts due under the Note as a result of such sale.

Dealer Credit Agreement, ¶ 3, Ex. 2. Paragraph 3 also clearly conveys that, to secure payment on all current and future debts, Bradley Machinery granted Lender a security interest on all present and future equipment purchased with advances made by Lender from the line of credit and all proceeds of that property. Paragraph 3 further explains that Bradley Machinery was required to execute additional security documentation as additional equipment was purchased. Moreover, the Dealer

Credit Agreement allowed Bradley Machinery to sell equipment in the ordinary course of business so long as Bradley Machinery paid the amounts due under the Promissory Note as a result of the sale.

The Amendment of Loan Documents executed by the parties after the breach further reflects the parties' understanding of their prior agreement. The Amendment of Loan Documents refers to the individual notes and security agreements as "schedules" and makes references to the Dealer Credit Agreement,"The Promissory Note," Security Agreement and Individual Guaranty. This language supports Mr. Jarussi's testimony that the Dealer Credit Agreement was the umbrella document that explained the rules of the relationship.

Likewise, the Confession of Judgment executed by the parties also reflects that Debtor owes Lender $308,828.12 under the Dealer Credit Agreement and the related schedules. Finally, Debtor himself referred to the arrangement as "a revolving line of credit." Tr. 205:14-15. The admitted exhibits included several of the amendments to the June 16, 2006 Promissory Note that reflect increases in the maximum amount of the line of credit, extension of time for the maturity date, and changes in terms of interest. Perhaps most telling is Debtor's admission that he sold equipment "out of trust." Amended Ans. to Complaint, ¶ 6, ECF No. 10, Tr. 225:7-11. In the automotive sales industry, a dealer's sale of automobile inventory without paying the secured lender is known as selling "out of trust." *Eaton v. Ford Motor Credit Co., LLC*, 2012 WL 3579644, at *3-4 (M.D. Tenn. Aug. 17, 2012) (citing *Ford Motor Credit Co. v. Moody* (*In re Moody*), 277 B.R. 865, 868 (Bankr. S.D. Ga. 2001)).

The contract documents, exhibits and testimony show that the Dealer Credit Agreement did control and play a key role in the financing arrangement. The individual security agreements and promissory notes laid out payment plans that supplemented the Dealer Credit Agreement and were used to pay down the debt while equipment remained unsold. The individual security agreements and promissory notes, as well as the Dealer Credit Agreement and Promissory Note, allowed collateral to be sold in the ordinary course of business. The Dealer Credit Agreement provided that collateral could be sold as long as the proceeds were paid to Lender. The Promissory Note contained a specific provision for this payment to occur five days after the sale.

Accordingly, the Panel holds that based on the Dealer Credit Agreement, and other documents, Lender had a security interest in the proceeds of the sale of collateral and Debtor had a duty to use the proceeds of sales of collateral to pay Lender.

The record firmly establishes that Debtor knew about Lender's lien rights and knew that failure to remit the proceeds would be substantially certain to harm Lender. The parties intended the proceeds of sale of collateral to be used to pay down the debt owed to Lender and Debtor did not do so. He retained them for a different use. The fact that it was for a business use does not alter this finding.

> Under § 523(a)(6), the business person is held to a higher standard as a business person who is more knowledgeable of the natural consequences of his acts. *Trust Co. Bank v. Ricketts* (*In re Ricketts*), 16 B.R. 833, 834–35 (Bankr. N.D. Ga. 1982). . . . A willful and malicious conversion occurs where an individual in bankruptcy obtains vehicles, as an officer of a dealership, with money advanced by a secured creditor, and then disposes of those vehicles without remitting the sale proceeds to the secured creditor. Such acts are contrary to the parties' floor plan agreement's express provisions. A debtor's sales out of trust creates a debt that is nondischargeable under § 523(a)(6). *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir. 1987).

*Eaton*, 2012 WL 3579644, at *3-4.

Debtor admitted he knew about Lender's lien rights in the collateral. Debtor described the relationship between the Debtor and Lender as "floor plan" financing. Tr. 205:15; 215:10-12. He signed the financing documents that gave Lender a security interest in the collateral. In the answer to the complaint and at trial, Debtor admitted that he sold equipment "out of trust." Tr.225:7-11. Moreover, Debtor's action of selling the collateral and lying about it so that he did not have to turn over the proceeds of the collateral shows that Debtor knew that his conduct would cause injury to Lender's right to receive the proceeds.

Accordingly, the Panel finds that the injury to Lender was willful.

## 2.    Malicious

The Bankruptcy Court made the factual finding that Debtor did not intend to harm Lender when it kept the proceeds of the sales of Lender's collateral.  The Bankruptcy Court noted that "[Debtor] testified based on history he believed his business would recover and he would be able to pay his debts.  Feb. 5, 2013, Op. at 6, ECF No. 61.  However, the test for maliciousness in the context of § 523(a)(6) does not focus on Debtor's subjective intent to repay.[4]

> [M]alicious "means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986).  Stated differently, "[t]here must also be a consciousness of wrongdoing. . . .  It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001) (citations omitted).

*Auto. Fin. Corp. v. Leonard* (*In re Leonard*), 2012 WL 1565120, at *11 (Bankr. E.D. Tenn. May 2, 2012)..  While a debtor's "subjective mind set is central to the inquiry," the focus is not on whether a debtor intended to repay the debt eventually.[5]  Rather, the focus is on "whether debtor acted deliberately in knowing disregard of a creditors' rights in property."  *Ocean Equity Grp., Inc. v.*

---

[4]  While the Panel does not have cause to review the Bankruptcy Court's determination regarding Debtor's subjective intent to repay, the Panel notes that some of the facts relied upon by the Bankruptcy Court in reaching this conclusion are clearly erroneous.  For example, the Bankruptcy Court held that Debtor paid $100,000 - "a sizeable amount" toward the Settlement Agreement.  Feb. 5, 2013, Op. at 9,11, ECF No. 61.  However, this fact is not supported by the record.  Mr. Jarussi testified that of the $100,000 that Lender recouped, $84,000 was on account of equipment that was returned to Yanmar.  The credit from Yanmar was already pending at the time Bradley Machinery, Debtor and Lender entered into the Settlement Agreement and was not a result of any post-settlement efforts by Debtor to repay the debt.  August 10, 2012, Trial Tr. 149:6-14;Tr. 157:17-158:9, ECF No. 74.  Mr. Jarussi also testified that Bradley Machinery made "some payments" toward the settlement agreement.  Tr. 158:1-5. Debtor admitted that Mr. Jarussi was correct, and he only made payments totaling approximately $18,000 toward the debt over the course of almost two years.  Tr. 208:11-14.

[5]  The bankruptcy court placed emphasis on Debtor's desire to save his business.  However, a debtor's desire to save his business is not dispositive of whether he intended to harm the creditor, particularly within the Sixth Circuit.  *Eaton v. Ford Motor Credit Co., LLC*, 2012 WL 3579644 (M.D. Tenn. Aug, 17, 2012) (citing *General Motors Acceptance Corp. v. Cline*, 431 B.R. 407, 2010 WL 22334 (B.A.P. 6th Cir. 2010) (table)).

*Wooten* (*In re Wooten*), 423 B.R. 108 (Bankr. E.D. Va. 2010) (quoting *Johnson v. Davis* (*In re Davis*), 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001)). Under § 523(a)(6), malice is inferred when a car dealer knows the harm for his failure to remit the proceeds obtained from vehicles sold out of trust. *Leonard*, 2012 WL 1565120, at *11. *See also Longley*, 235 B.R. at 656–58; *HOC, Inc. v. McAllister* (*In re McAllister*), 211 B.R. 976, 982–83 (Bankr. N.D. Ala. 1997).

The Panel holds that Debtor acted maliciously as defined by § 523(a)(6). The record establishes that Debtor acted in "knowing disregard" of Lender's security interest in the proceeds of the collateral. Debtor's extensive efforts to keep information regarding the sales hidden from Lender, indicates that Debtor knew that his action of keeping the proceeds of the sales was wrongful under the terms of the contracts. Debtor knew that his use of the proceeds for other business purposes would injure Lender's right to receive the proceeds. The fact that Debtor may have had a subjective intent to eventually repay the debt owed to Lender does not excuse the injury to Lender's security interest. The record is devoid of any facts which could support the notion that Debtor acted with just cause or excuse.

Debtor converted the proceeds of the sales of collateral which were subject to Lender's security interest. Lender's damages are a debt that is the result of a willful and malicious injury. Accordingly, it is non-dischargeable pursuant to § 523(a)(6). The record before the Panel does not reflect the amount of proceeds that were retained by Debtor upon the sale of Lender's collateral. Accordingly, the matter is REMANDED for a determination regarding the amount of damages.[6]

---

[6] When Lender attempted to assert proof of damages at trial, the Bankruptcy Court stated that it normally does not liquidate claims, but just determines non-dischargeability. August 10, 2012, Trial Tr. 101:19-104:24, ECF No. 74. The Panel notes that the bankruptcy court has concurrent jurisdiction with the state court to determine the amount of damages. 28 U.S.C. § 1334(b); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993). The measure of damages may not be equivalent to the full amount of the debt owed by Debtor to Lender: only the damages caused by Debtor's conduct in converting the proceeds are nondischargeable pursuant to § 523(a)(6). Those damages are comprised of the amount of the sale proceeds and possibly other damages. In this case, there was no concurrent state court action, so the Panel finds it is particularly appropriate for the bankruptcy court to determine damages given its familiarity with the underlying facts.

C.    11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or . . .an extension, renewal, or refinance of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), the creditor bears the burden of proving by a preponderance of the evidence, that:

(1) the debtor obtained money [or an extension, renewal, or refinancing of existing credit] through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

(2) the debtor intended to deceive the creditor;

(3) the creditor justifiably relied on the false representation; and

(4) its reliance was the proximate cause of the loss.

*See Old Republic Title Co. of Tenn. v. Looney* (*In re Looney*), 453 B.R. 252, 259 (B.A.P. 6th Cir. 2011); *Rembert v. AT & T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998).

In the present case, there is no dispute that the first and second prongs of § 523(a)(2)(A) are met. In the stipulated facts and at trial, Debtor testified that he lied to Lender regarding which pieces of equipment had been sold prior to entering into the Settlement Agreement. August 10, 2012, Trial Tr. 225:23-25; 240:4-12, ECF No. 74. Moreover, Debtor admitted at trial that he knew he was deceiving Lender and that he did so to get Lender to agree to an extension of credit. Tr. 226:5-6. Debtor testified that he made a conscious choice to disclose some, but not all of the sales of Lender's collateral because he did not want to "make it look any worse." Tr. 226:8. He admitted that when he entered the Settlement Agreement in March, there was an equipment list attached that affirmatively stated that he had possession of the Bobcat loader and two Gehl loaders that he did not have possession of because they had already been sold. Tr. 244:10-13; 247:5-6. He admitted that he continued to lie to Lender for over eighteen months because he was trying to give himself more time to pay off the debt. Tr. 226:18-24. *See also* Ex. 33-1 (email from Debtor to Lender's representative containing false information regarding hours on a Bobcat loader that had already been

sold.)  Additionally, he lied to Lender's auditors and supplied them with false documents so that Lender would not know that its collateral had been sold.  He also stipulated that he knew Lender would rely on these misrepresentations.  Second Joint Stipulations, ¶ 17, ECF No. 35.

The Bankruptcy Court, however, found that Lender did not justifiably rely on the misrepresentations.  The Bankruptcy Court found that Lender "did little to keep tabs on its collateral."  Feb. 5, 2013, Op. at 7, ECF No. 61.  The Bankruptcy Court noted that Lender did send auditors to investigate the status of equipment, however, once told by Defendant that the equipment was at another job site, the auditors ended the inquiry.  The Bankruptcy Court found that since Lender knew that Debtor had previously sold equipment without turning over the proceeds (having "lied") it was not reasonable to enter into a Settlement Agreement without conducting a more thorough investigation.  The Bankruptcy Court held that § 523 actions "are not meant to be substitutes for appropriate due diligence. [And Lender] could have done more to monitor the status of the equipment."  Therefore, the Bankruptcy Court found that Lender's reliance on Debtor's omissions and misrepresentations regarding the status of the collateral was not justifiable.  Feb. 5, 2013, Op. at 7, ECF No. 61.

The Bankruptcy Court's finding is clearly erroneous.  The Bankruptcy Court imposed a duty upon the Lender to investigate the truthfulness of Debtor's representations that is not required by law.

In *Field v. Mans*, 516 U.S. 59, 72–75, 116 S. Ct. 437, 444-46 (1995), the Supreme Court specifically rejected the notion that creditors must conduct an investigation to discover fraud.  *See also Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 135 (4th Cir.1999) (citing *Field* for the proposition that a creditor has no duty to investigate a debtor's factual representations, even if the falsity easily could be discovered).

> [T]he plaintiff is entitled to rely upon representations of fact of such a character as to require some kind of investigation or examination on his part to discover their falsity, and a defendant who has been guilty of conscious misrepresentation cannot offer as a defense the plaintiff's failure to make the investigation or examination to verify the same.

*Field*, 516 U.S. at 72 (quoting 1 F. Harper & F. James, *Law of Torts* 7.12, pp., 581–83 (1956)). *See also Lentz v. Spadoni* (*In re Spadoni*), 316 F.3d 56, 59 (1st Cir. 2003) (citing *Field* for the rule that "the circumstances of the reliance claim must be taken into account and that the individual is not obliged to investigate statements made to him (although he cannot shut his eyes to an obvious falsehood)."); *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh),* 973 F.2d 1454, 1459 (9th Cir.1992) (noting that under the justifiable reliance standard, "although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth")(citation omitted); *Holmes v. Nat'l City Bank* (*In re Holmes*), 414 B.R. 115, 122-23 (E.D. Mich. 2009).

If Debtor had confessed the sales, Lender would not have entered the Settlement Agreement. August 10, 2012, Trial Tr. 184:23-185:4, ECF No. 74 (testimony of Mr. Jarrusi that if Lender had known the collateral had been sold "there would have been nothing to work out."). Lender relied on oral statements and written documentation provided by Debtor (whom the Bankruptcy Court found "quite credible") that the equipment had not been sold and was still held as collateral subject to a security interest for the extension of credit provided by the Settlement Agreement and Amendment to Loan Documents. Lender relied on Debtor's continued false representations as to the status of the collateral in its decision to agree to a forbearance under the Settlement Agreement. Lender did attempt to determine the location and status of its collateral following the Settlement Agreement through several audits and requests for information from Debtor. The reasons given for the equipment to be unavailable to view (because it was on lease to third parties) appeared legitimate in light of the supporting documentation provided by Debtor indicating that this was an authorized use of the equipment under the terms of the parties' agreements. Lender did not "shut [its] eyes to an obvious falsehood." Accordingly, Lender's reliance on Debtor's misrepresentation of the equipment's status was, in fact, justifiable. The Bankruptcy Court's finding to the opposite is clearly erroneous.

The last element Lender is required to prove for a finding of non-dischargeability under § 523(a)(2)(A) is that reliance on the material misrepresentation is the proximate cause of its loss. The Bankruptcy Court did not conduct a separate analysis of this prong but simply stated that Lender's "actions at the time it entered into the Settlement Agreement and thereafter do not support

a finding . . . of justifiable reliance or that Debtor's deceit was the proximate cause of its loss." Feb. 5, 2013, Op. at 5, ECF No. 61. In his post-trial brief, Debtor argues that the misrepresentation of the status of the equipment was not the proximate cause of Lender's loss because if Lender had not entered into the Settlement Agreement, and instead had pursued a judgment against Debtor under the guaranty, it would not have recovered any more money because Debtor did not have any more assets in 2009 than he had at the time the petition was filed. Def. Post-Tr. Br. at 3, ECF No. 59. On appeal, Debtor argues that even if this Panel reverses the Bankruptcy Court, only a portion of the total debt would be non-dischargeable because not all of the loss is a direct result of the lies about the status of the equipment.

After the Settlement Agreement, Debtor continued in business for approximately eighteen months. During that time, Debtor continued to provide false reports to Lender regarding the status of its collateral. Debtor stipulated that he sold at least one piece of equipment that was subject to Lender's Security interest after the Settlement Agreement without turning over proceeds.[7] Second Joint Stipulations ¶ 13, ECF No. 35. Lender may be able to establish that it would have been able to recover more collateral, or collateral with less depreciation, or that it may have been able to pursue other remedies with more likelihood of success, if it had not entered into the Settlement Agreement with Bradley Machinery and Debtor and had begun pursuing its remedies almost two years earlier. Additionally, Debtor testified that he took a "draw" from Bradley Machinery of $15,900 in 2009 and $23,000 in 2010. August 10, 2012, Trial Tr. 243:8-10, ECF No. 74. Therefore, it does appear that the business had enough assets to pay Debtor $38,900 while Lender continued to extend credit based on Debtor's material misrepresentations regarding Lender's collateral. Additionally, ceasing business almost two years earlier might have provided even more assets if all overhead was eliminated rather than just reduced. (See Debtor's testimony that he reduced overhead by $2,000 per month by firing all other employees and moving to a new location. August 10, 2012, Trial Tr. 249:19-22, ECF No. 74.) Finally, during 2009 and 2010, Lender expended funds attempting to, as the Bankruptcy Court put it, "keep tabs on" its collateral due to Debtor's material misrepresentations.

---

[7] Debtor did contradict this admission at trial, asserting that he had not sold any equipment after the date of the Settlement Agreement. August 10, 2012, Trial Tr. 225:23-25, ECF No. 74.

If Lender had known the collateral had been sold, Lender may not have needed to pay for some or all of an auditor's services.

Accordingly, the Panel holds that the Bankruptcy Court's factual finding that reliance on Debtor's misrepresentation(s) regarding the status of the collateral was not the proximate cause of loss is clearly erroneous. Lender suffered a loss due to Debtor's misrepresentations and lies regarding the status of the collateral. The Panel must remand for further factual findings to determine the amount of damages attributable to Lender's forbearance from collection that resulted from entering into the Settlement Agreement.[8]

The Bankruptcy Court relied heavily on its determination that at the time of the Settlement Agreement, Debtor had a subjective intent to repay the debt. However, Debtor's subjective intent to repay is not a factor under the § 523(a)(2)(A) *Rembert* test when there is a separate specific false material misrepresentation. Debtor's representation that Bradley Machinery still possessed three pieces of valuable equipment that were collateral for the loans in question was a material misrepresentation. Debtor stipulated that he intended to deceive the creditor. Further, Debtor knew that Lender would rely on these misrepresentations when determining whether to continue to extend credit to him. Accordingly, the Bankruptcy Court's determination that Lender did not prove the elements of § 523(a)(2)(A) is REVERSED and the case is REMANDED for a determination of damages.

D. Lender's Motion to Amend or Make Additional Findings of Fact

Federal Rule of Bankruptcy Procedure 7052 applies Rule 52 of the Federal Rules of Civil Procedure to bankruptcy adversary proceedings. Fed. R. Bankr. P. 7052. Rule 52(a)(1) states that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." *Id*. "Findings [of fact] are to be liberally construed in support

---

[8] See footnote 5. Damages for the § 523(a)(2)(A) cause of action would be whatever loss is attributable to Lender's forbearance under the Settlement Agreement and thereafter, due to Debtor's repeated misrepresentations regarding the status of the collateral.

of a judgment, even if the findings are not as explicit or detailed as might be desired." *Fordu*, 201 F.3d at 710 (citation omitted).

> It is not necessary for the [Bankruptcy] Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (6th Cir. 1992) (citing *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792-93 (6th Cir. 1984)).

In the present case, there were more stipulated facts than the Bankruptcy Court included in the written opinion. There were also additional facts in the admitted exhibits and provided by the testimony of both witnesses. Those additional facts dictate a different result on the merits. Therefore, the Bankruptcy Court erred in not granting the Rule 7052 motion.

## V.  CONCLUSION

The Bankruptcy Court's holding that Lender did not prove the elements of § 523(a)(4) is AFFIRMED on alternative grounds.

However, the debt is non-dischargeable pursuant to § 523(a)(2)(A) and § 523(a)(6). Debtor obtained an extension of credit, via the Settlement Agreement, due to Lender's reliance on Debtor's false statements. Debtor's actions show that he knew that he had a duty to remit the proceeds to Lender and that his failure to remit the proceeds would harm Lender. Additionally, the Bankruptcy Court abused its discretion in denying Lender's motion to amend the findings of fact and conclusions of law. The Bankruptcy Court's ruling that the debt owed to Lender is dischargeable is REVERSED. The case is REMANDED for a determination of the amount of damages that Lender suffered due to Debtor's conversion pursuant to § 523(a)(6) and fraudulent misrepresentations pursuant to § 523(a)(2)(A) and for an entry of judgment in favor of Lender accordingly.