NOT RECOMMENDED FOR PUBLICATION
File Name: 26b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: STEVEN K. BAILEY,

*Debtor.*

REGINA CREMEANS, personal representative of the estate of Rebecca Bailey, deceased,

*Plaintiff-Appellant,*

*v.*

STEVEN K. BAILEY,

*Defendant-Appellee.*

Nos. 24-8023/25-8002

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Ashland.

No. 1:22-bk-10013—Douglas L. Lutz, Bankruptcy Judge.

Decided and Filed:  February 2, 2026

Before:  BAUKNIGHT, Chief Judge; GUSTAFSON and MERRILL,
Bankruptcy Appellate Panel Judges.

———————————

## COUNSEL

**ON BRIEF:** Robert W. Miller, Grayson, Kentucky, for Appellant.  Bruce E. Blackburn,
BLACKBURN LAW, PLLC, Raceland, Kentucky, for Appellee.

———————————

## OPINION

———————————

SUZANNE H. BAUKNIGHT, Chief Bankruptcy Appellate Panel Judge.  These appeals
arise from orders entered after remand following the prior Panel's determination that judgment on

the pleadings was not appropriate.[1]  On remand, after trial, the bankruptcy court ruled for the debtor, finding that the plaintiff-creditor had not established the elements required to find the debt nondischargeable pursuant to either § 523(a)(4) or (a)(5).  The trial ruling is the subject of the first appeal.  In the second appeal, the bankruptcy court ruled (without prejudice) that the plaintiff-creditor had not demonstrated cause for relief from the automatic stay or established a right to setoff.  For the reasons that follow, we AFFIRM.

## ISSUES ON APPEAL

The Appellant has set forth the following issues on appeal:

**Case No. 24-8023[2]**

1.  Did the bankruptcy court err in finding at trial that a portion of the debt was not nondischargeable pursuant to § 523(a)(4)?

2.  Did the bankruptcy court err in finding at trial that all or a portion of the debt was not nondischargeable as a domestic support obligation pursuant to § 523(a)(5)?

3.  Did the bankruptcy court err in excluding from evidence the deposition testimony of state family court judge Hon. David Flatt?

**Case No. 25-8002[3]**

1.  Did the bankruptcy court err in denying the motion for relief from stay to carry out setoff?

2.  Did the bankruptcy court err in holding that the setoff could not be allowed after plan confirmation?

3.  Did the bankruptcy court err in overruling the motion to amend the judgment?

4.  Did the bankruptcy court err in ordering Appellant to execute a deed to the debtor?

---

[1]*Bailey v. Bailey* (*In re Bailey*), No. 23-8001, 2024 WL 1511984 (B.A.P. 6th Cir. Apr. 8, 2024).

[2]These issues are paraphrased from Appellant's brief, in which they differ from the Statement of Issues filed by Appellant.  [*Compare* Statement of Issues at 1, BAP Case No. 24-8023, ECF No. 7, *with* Appellant's Br. at 1-2, BAP Case No. 24-8023, ECF No. 21.]

[3]Because Appellant's Civil Appeal Statement of Parties and Issues and Appellant's brief differ and seem to be duplicative, the Panel has paraphrased the issues raised by Appellant.  [*Compare* Statement of Issues, BAP Case No. 25-8002, ECF No. 4, *with* Appellant's Br. at 1-2, BAP Case No. 25-8002, ECF No. 11.]

**JURISDICTION**

Under 28 U.S.C. § 158(a)(1), the Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by a bankruptcy court. "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1691 (2015)). Orders that "fully dispose of the adversary proceeding" are final. *Church Joint Venture, L.P. v. Bedwell* (*In re Blasingame*), 598 B.R. 864, 868 (B.A.P. 6th Cir. 2019); *see also Geberegeorgis v. Gammarino* (*In re Geberegeorgis*), 310 B.R. 61, 63 (B.A.P. 6th Cir. 2004) ("[A]n order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting." (citations omitted)).

Here, the orders and judgments on appeal are "procedurally complete and determinative of [the parties'] substantive rights." *Smith v. U.S. Bank Nat'l Assoc.* (*In re Smith*), No. 19-8021, 2019 WL 4271977, at *2 (B.A.P. 6th Cir. Sept. 10, 2019) (quoting *Ritzen Grp., Inc. v. Jackson Masonry, LLC* (*In re Jackson Masonry, LLC*), 906 F.3d 494, 501 (6th Cir. 2018), *aff'd*, 589 U.S. 35, 37)). Additionally, Appellant raises issues on appeal concerning the bankruptcy court's evidentiary ruling regarding the admissibility of deposition testimony. "[I]t is well settled in this circuit that an appeal from a final judgment draws into question all prior non-final rulings and orders." *In re Blasingame*, 598 B.R. at 868 (quoting *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 428 (6th Cir. 1992)).

**STANDARD OF REVIEW**

A determination of the dischargeability of a debt presents mixed questions of law and fact. *Kraus Anderson Cap., Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014). The appellate court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Id.* (citing *Bank of Montreal v. Off. Comm. of Unsecured Creditors* (*In re Am. HomePatient, Inc.*), 420 F.3d 559, 563 (6th Cir. 2005) (citations omitted)). Legal determinations are reviewed de novo and factual findings are reviewed under the clearly erroneous standard. *Bradley*, 507 B.R. at 196. "Mixed questions are not all alike." *U.S. Bank N.A., Trustee ex rel. CWCapital Asset Mgmt. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395-96, 138 S. Ct. 960, 967 (2018). "[T]he standard of review for a mixed

question all depends—on whether answering it entails primarily legal or factual work." *Id.*

*Doe v. Boland* (*In re Boland*), 596 B.R. 532, 537 (B.A.P. 6th Cir. 2019). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bradley*, 507 B.R. at 196 (quoting *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007)). If a bankruptcy court's factual conclusion is "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it[.]" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985). Further, the appellate court cannot find clear error when "there are two permissible views of the evidence," even if the appellate court might have "weighed the evidence differently." *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citation omitted)).

Concerning Appellant's challenge to the bankruptcy court's denial of the motion for relief from the automatic stay, the Panel must apply the abuse-of-discretion standard. *State Bank of Florence v. Miller* (*In re Miller*), 513 F. App'x 566, 570 (6th Cir. 2013) ("We review the bankruptcy court's decision to deny relief from the automatic stay for an abuse of discretion." (citation omitted)).

## FACTS

Steven Bailey ("Debtor" or "Steven") and Rebecca Bailey ("Appellant" or "Rebecca") were married on December 24, 1980. While married, the couple owned and operated Tri-State Roofing and Remodeling, Inc. ("Tri-State"). In 2013, Steven initiated divorce proceedings, which ended up being contentious. While the divorce was proceeding, Steven remained in possession and control of the business and was ordered by the state court to place business income in "the

business account."[4] (Order, Adv. P. 22-01001, ECF No. 112-1 ("Restraining Order").) Steven did not comply with the Restraining Order and was held in contempt of court by the state court. At the conclusion of the divorce case in August 2016, the state court held that Steven had used approximately $320,000.00 that should have been segregated in the business account. The state court awarded Rebecca a judgment in the amount of $160,000.00 representing half of the business income while the divorce was pending ("$160,000 Judgment"). Steven appealed, and the Kentucky Court of Appeals affirmed the judgment.

In February 2022, Steven filed a chapter 13 bankruptcy petition in the Eastern District of Kentucky. In his chapter 13 bankruptcy case, Steven scheduled the debt owed to Rebecca as unsecured.[5] Rebecca filed a proof of claim and an objection to the Debtor's chapter 13 plan and initiated an adversary proceeding asserting that the debt should be held nondischargeable. Rebecca asserted that the $160,000 Judgment[6] arose from defalcation while acting as a fiduciary, and/or embezzlement, and/or spousal support making it nondischargeable.

### Proceedings Reviewed in the 2023 Appeal

The bankruptcy court granted Steven's motion for judgment on the pleadings on September 26, 2022, dismissing some of Rebecca's claims. (Mem. Op. and Order Granting Motion for J. on the Pleadings in Part & Denying M. for Partial Summ. J. ("September 26, 2022 Opinion"), Adv. P. 22-01001, ECF No. 54.) In the September 26, 2022 Opinion, the bankruptcy court held that Rebecca had not stated a claim under § 523(a)(5) because the $160,000 Judgment was not labeled as a support obligation and the divorce decree did not show any indication that it was intended as support, such as being contingent upon any subsequent events. (*Id*. at 5.) The bankruptcy court also dismissed Rebecca's claim under § 523(a)(4) that the $160,000 Judgment was

---

[4]Appellant uses the term "business account" for the Tri-State account into which the state court ordered Debtor to deposit all proceeds received by either party for Tri-State. (*See* Appellant's Br. at 4.)

[5]The confirmed plan, however, treated Rebecca's claim as secured by a judicial lien to the extent of $95,509.32 after avoidance of the portion that impaired Steven's exemption. (Agreed Order Confirming Amended Chapter 13 Plan Filed March 28, 2024 ("Order Confirming Plan"), Case No. 22-10013, ECF No. 161; Amended Chapter 13 Plan at 4, Case No. 22-10013, ECF No. 123.) Steven's answer to Rebecca's complaint noted that his then-unconfirmed plan proposed to pay a portion of the debt to Rebecca as secured.

[6]Rebecca's claim included 6% post-judgment interest on the $160,000 Judgment.

incurred through "fraud or defalcation while acting in a fiduciary capacity or larceny." (*Id*.) The bankruptcy court determined that the complaint did not allege any facts supporting the existence of an express trust or a trust *res* and, thus, Steven did not have the fiduciary duty required for a finding of defalcation. (*Id*. at 6.) The bankruptcy court also held that the complaint did not allege that the funds "wrongfully came into the debtor's possession" and, therefore, could not support a cause of action for larceny. (*Id*. at 7.) The bankruptcy court, however, found that the complaint sufficiently alleged a plausible claim for embezzlement and denied Steven's motion. (*Id.* at 7-8.) The bankruptcy court then denied Rebecca's motion for summary judgment on the embezzlement claim because genuine issues of material fact existed concerning Steven's alleged fraudulent intent. (*Id*. at 8-9.)[7]

Rebecca did not attend the November 30, 2022 trial due to illness.[8] The court heard testimony only from Steven on that day. The bankruptcy court offered Rebecca the opportunity to submit further evidence or put on further proof, but she declined. (*See* Tr. Nov. 30, 2022 H'rg at 55:23-56:3, Adv. P. 22-01001, ECF No. 92; Status Report, Adv. P. 22-01001, ECF No. 75.) The bankruptcy court closed the evidence on December 16, 2022, and deemed the matter submitted.

The bankruptcy court then entered its December 21, 2022 Opinion, which included the summary judgment determinations not relevant to the current appeals, as well as judgment for Steven on the embezzlement count, finding that Rebecca had not carried her burden of proof at trial to show a fraudulent intent on Steven's part. (Adv. P. 22-01001, ECF No. 77 at 9-14.) Rebecca filed an appeal, which was argued before the Bankruptcy Appellate Panel on November 7, 2023. On April 8, 2024, the Panel issued an opinion affirming in part but reversing as to the judgment on the pleadings relative to the § 523(a)(4) claim for defalcation and the § 523(a)(5) claim.

---

[7]The bankruptcy court also denied Rebecca's motion for summary judgment on a purported § 523(a)(6) claim, finding that the complaint did not assert a § 523(a)(6) cause of action and that a prior motion to amend the complaint had previously been denied. (*Id*. at 9.)

[8]Rebecca has since passed away. Her personal representative has been substituted as Appellant on behalf of Rebecca's estate.

**Proceedings on Remand**

After the BAP remanded for further proceedings on the § 523(a)(4) and (a)(5) claims, the bankruptcy court conducted a trial on August 14, 2024.  The bankruptcy court determined that Rebecca had not carried her burden of proving that the $160,000 Judgment should be deemed nondischargeable under either § 523(a)(4) or (a)(5).  Rebecca filed a timely appeal. (Case No. 24-8023.)

Following the bankruptcy court's post-remand trial decision, Rebecca sought relief from the automatic stay in the bankruptcy case to pursue a setoff.  In her motion, Rebecca asserted that the April 8, 2024 BAP opinion gave her setoff rights.  While the motion for relief from the automatic stay was pending, the court conducted a hearing and entered the Order Confirming Plan on November 18, 2024.  (Case No. 22-10013, ECF No. 161.)  On December 2, 2024, Rebecca timely moved to amend the Order Confirming Plan.

On December 18, 2024, the bankruptcy court entered an Order Denying Motion to Amend Judgment. (Case No. 22-10013, ECF No. 178.)  Also on December 18, 2024, the bankruptcy court entered an Order Denying Creditor's Motion for Relief from the Automatic Stay and Granting Debtor's Motion to Compel[9] ("Order Denying Relief"), which denied Rebecca's request for stay relief because she "failed to provide a developed legal argument as to either (a) the standard applicable to motions to modify the automatic stay, or (b) the existence of her setoff right under nonbankruptcy law."[10]  (Order Denying Relief at 2, Case No. 22-10013, ECF No. 177.)  Rebecca filed another timely appeal.  (Case No. 25-8002.)

---

[9]The bankruptcy court granted Debtor's request to require Rebecca to transfer to Steven the real property against which she sought to pursue setoff.  (Order Denying Relief at 6-7, Case No. 22-10013, ECF No. 177.)

[10]The bankruptcy court held that § 362(b)(2)(A)(ii) contains an express exception to the automatic stay which allows a creditor to return to state court to establish or modify a domestic support obligation.  (Order Denying Relief at 1, Case No. 22-10013, ECF No. 177.)  Thus, the court held that it did not need to modify the stay to allow such action.  (*Id.*)  Nothing in the record suggests that Rebecca filed anything in the state court seeking to modify the domestic support obligation.

**DISCUSSION**

**Case No. 24-8023**

## I. Defalcation Under § 523(a)(4)

After remand from the BAP, Rebecca filed a motion for partial summary judgment on the § 523(a)(4) claim, arguing that the terms of the Restraining Order and the divorce decree established the elements for finding fraud or defalcation in a fiduciary capacity. Steven argued that the BAP opinion only addressed whether a ruling on the pleadings was appropriate and asserted that the bankruptcy court's original holdings were still relevant and applicable. At a pre-trial conference, the bankruptcy court instructed the parties to address whether the Restraining Order created an express trust under Kentucky law. (Aug. 7, 2024 H'rg at 2:45-4:20, Adv. P. 22-01001, ECF No. 122.) The bankruptcy court heard oral argument on the motion for summary judgment but reserved its ruling and conducted a trial. After trial, at which only Steven testified and Rebecca did not attend, the bankruptcy court found that the Restraining Order, on which Rebecca had relied almost exclusively, did not create an express or technical trust under Kentucky law.

Section 523(a)(4) renders nondischargeable any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). "To except a debt from discharge as a defalcation, the preponderance of the evidence must establish '(1) a preexisting fiduciary relationship, (2) a breach of that fiduciary relationship, and (3) a resulting loss.'" *Long v. Piercy* (*In re Piercy*), 21 F.4th 909, 926 (6th Cir. 2021) (quoting *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Commonwealth Land Title Co. v. Blaszak* (*In re Blaszak*), 397 F.3d 386, 390 (6th Cir. 2005))). The "fiduciary capacity" requirement will be found only in "situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Blaszak*, 397 F.3d at 391 (citation omitted). To establish an express trust, a plaintiff must show the following: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id*. (citations omitted).

At trial, the bankruptcy court observed Steven (the only witness) "to be a reluctant witness who distrusted Plaintiff's counsel . . . but otherwise found his testimony credible." (Mem. Op. Granting J. to Def. ("Sept. 2024 Mem. Op.") at 11, Adv. P. 22-01001, ECF No. 131, Sept. 19, 2024.) Ultimately, as to Appellant's § 523(a)(4) claim, the bankruptcy court held:

> The summary judgment and trial record established that [Steven] operated Tri-State and received business proceeds that he did not deposit into a Tri-State account as the 2013 Restraining Order required. Further, as the family court held in 2016 that [Rebecca] was entitled to receive half the proceeds that should have been deposited in Tri-State's account during the divorce proceedings, and [Rebecca] did not receive these funds, [Rebecca] also proved [Steven's] failure to deposit the funds ultimately resulted in her loss. But [Rebecca] did not establish that a fiduciary relationship existed between [Rebecca] and [Steven] based on a trust imposed on the business proceeds.

(*Id.* at 14-15.)

The bankruptcy court reviewed the text of the Restraining Order, which Rebecca argued created a trust. The Restraining Order provided that the funds in Tri-State's accounts "shall remain there until further orders of the Court." (Restraining Order at 3, Adv. P. 22-01001, ECF No. 112-1.) It further directed that "[n]either party shall convey, encumber, or dispose of any assets of the parties, including but not limited to, the assets of Tri-State . . . during the pendency of this action." (*Id.*)

The bankruptcy court found that the Restraining Order did not establish a trust for three reasons. First, the Restraining Order did not contain the words "trust," "trustee," "fiduciary," "beneficiary," or "escrow account." (Sept. 2024 Mem. Op. at 16.) Second, it did not state that Rebecca or anyone else had any entitlement to any funds deposited into Tri-State's account. (*Id.*) The bankruptcy court also noted that Tri-State is (or was) a separate legal entity and that Rebecca had not offered any proof that funds deposited into Tri-State's account would be distributed to her at the conclusion of the divorce proceeding. (*Id.*) Third, the bankruptcy court noted that "the Restraining Order does not state [that Steven] would administer or oversee funds in the account, *i.e.*, serve as trustee of the trust res for a designated beneficiary." (*Id.*) The bankruptcy court concluded that "the Restraining Order itself does not provide support for at least three of the four

elements of an express trust under Kentucky law" and that Rebecca "did not otherwise establish those elements with other admitted evidence." (*Id*. at 17.)

Appellant attempts to discount the reasons given by the bankruptcy court for dismissing her claim.[11]  Regarding the bankruptcy court's first reason – that the Restraining Order did not identify a trustee – Appellant argues that both Steven and Rebecca were "reciprocal or mutual trustees" because either was required to deposit any proceeds from the business into the business account.[12]  (Appellant's Br. at 7, 9-10.)  Appellant notes that the Sixth Circuit allows for dual or joint trustees.  (*Id.* at 10.)

In addressing the bankruptcy court's finding that the Restraining Order did not use any terms typically associated with a trust, such as "trustee," "fiduciary," "beneficiary," or "escrow account," Appellant argues that the lack of these words does not "change the plain language or obvious intent of the [R]estraining [O]rder." (*Id.* at 12.)  Appellant asserts on appeal that the facts of the case establish a "technical trust" created by operation of law.  (*Id.* at 10-11.)  Citing *In re Piercy* and *In re Patel*,[13] Appellant asserts that Kentucky Revised Statutes section 403.190, which governs division of marital property, should have been considered in addition to the Restraining Order, arguing:

> The [R]estraining [O]rder in question cannot be judged or determined solely on the status of a restraining order but must be interpreted and considered in conjunction with **KRS 403.190** the Kentucky statute, regarding division of property, between husband and wife, for which the Honorable Family Court Judge was using the civil rule and trying to preserve and divide assets, and the laws regarding the duties of corporate officers and directors, more fully set forth herein.

---

[11]Appellant's brief asserts that the BAP's prior opinion establishes that a trust existed and that the bankruptcy court erred by disregarding "the law of the case." (Appellant's Br. at 8.)  This argument fails.  The BAP's prior opinion did not find that a trust existed.  Rather, it held that the failure to establish or fund a specific account did not prevent a trust from existing.  The Panel remanded the case for further findings because judgment on the pleadings was inappropriate given that legal error, and because it was error for the bankruptcy court "to decide the existence of or intent to create a trust without reviewing or relying on the document purporting to create the trust." *Bailey v. Bailey* (*In re Bailey*), No. 23-8001, 2024 WL 1511984, at *9 (B.A.P. 6th Cir. Apr. 8, 2024).

[12]The concept that they were both trustees appears to be a new argument not previously raised to the bankruptcy court.  The previous filings appear to refer to only Steven as the trustee.

[13]Appellant's Brief incorrectly cites *In re Patel*.  The correct citation is *Patel v. Shamrock Floorcovering Servs., Inc.* (*In re Patel*), 565 F.3d 963 (6th Cir. 2009).

(*Id.* at 12.)  Appellant explains further that a technical trust arose out of Steven and Rebecca's status as corporate officers in Tri-State.  (*Id.* at 13.)  Appellant points to Kentucky Revised Statutes sections 271B.8-300 and 271B.8-420, which govern standards of conduct for directors of a public benefit corporation[14] and officers of a private corporation or association, respectively, asserting that the statutes create a fiduciary duty to preserve all partnership assets.  (*Id.*)

Appellant failed to raise this argument to the bankruptcy court.  Indeed, the bankruptcy court noted that "Plaintiff never alleged or attempted to prove that a statute (state or federal) created a technical trust."  (Sept. 2024 Mem. Op. at 18.)  Neither the summary judgment brief, the trial brief, nor the trial transcript contain any argument that either of the now-cited statutes created a trust or a fiduciary duty.  The only reference to any statutory authority concerning a trust was at the trial, when Appellant's counsel argued: "And that's what we have in this case.  We have, we believe, a trust created by operation of law because you have – and that law being Kentucky's rules regarding temporary injunctions, *Kentucky's rules regarding corporate officers, their duty to the corporation*."  (Tr. Aug. 14, 2024 H'rg at 13:8-12, Adv. P. 22-01001, ECF 156 (emphasis added)).  Notwithstanding that the sole argument in the trial brief was that the state court order "clearly created the trust," not that a statute created a trust (Pl.'s Trial Br. at 5 ¶ 1, Adv. P. 22-01001, ECF No. 121), Appellant now argues that the bankruptcy court "erred in focusing solely on the language of the [R]estraining [O]rder and failing to consider the underlying relationship between the parties, their obligations to one another, and their obligations toward their business." (Appellant's Br. at 14.)  The perfunctory and opaque manner in which Appellant raised this argument (only) at trial, without specifically citing the allegedly applicable Kentucky statute or explaining how it applied to the parties (*see* Tr. Aug. 14, 2024 H'rg at 13:8-12, Adv. P. 22-01001, ECF No. 156), deprives the Panel of opportunity for meaningful review.  "[A]ppellate courts ordinarily do not consider issues raised for the first time on appeal." *Nyamusevya v. CitiMortgage,*

---

[14]"Public benefit corporation," as used in section 271B.8-300, is defined as "a for-profit corporation that is intended to produce a public benefit and to operate in a responsible manner, balancing the stockholders' pecuniary interests, the best interests of those materially affected by the corporation's conduct, and the public benefit identified in its articles of incorporation." Ky. Rev. Stat. Ann. § 271B.1-400 (West).  Because the record contains no evidence that Tri-State was a public benefit corporation, section 271B.8-300 does not apply.

*Inc.* (*In re Nyamusevya*), No. 19-8027, 2021 WL 193965, at \*7 (B.A.P. 6th Cir. Jan. 20, 2021) (citations omitted).  Thus, these arguments are waived.[15]

Lastly, Appellant asserts that the parties' names in the caption of the Restraining Order is a "sufficient manifestation of intent to create the status of a beneficiary to a trust[.]" (Appellant's Br. at 14.)  Appellant cites no authority to support this assertion.  Moreover, at trial, Appellant argued that Rebecca "owned the other half of the business, and was ultimately determined by the Family court to be entitled to half of the proceeds that should have went [sic] into that account." (Tr. Aug. 14, 2024 H'rg at 5:25-6:3, Adv. P. 22-01001, ECF No. 156.)  Appellant did not explain how the future determination of entitlement equates to a finding that Rebecca was an intended beneficiary of the alleged trust *at the time* it was allegedly created.  Appellant does not address the language of the Restraining Order requiring both parties to preserve the business assets in business accounts for future determination.  Further, Appellant provides no evidence that Rebecca was the intended beneficiary at the time the Restraining Order was entered.  In short, Rebecca did not show that the beneficiary requirement for the creation of an express trust was satisfied.

In the prior BAP opinion, the Panel remanded this issue because judgment on the pleadings was not appropriate.  Rather than develop an evidentiary record or raise additional arguments at trial, Rebecca asserted that the BAP's opinion conclusively found the existence of an express trust.  The BAP opinion, however, did not.  Rebecca did not carry her burden of proof or persuasion.  The bankruptcy court's decision is AFFIRMED.

## II.  Domestic Support Obligation Under § 523(a)(5)

Appellant also argues that the $160,000 Judgment owed to her is spousal support and is nondischargeable under § 523(a)(5).  Specifically, § 523(a)(5) provides:

---

[15]Even if the argument had not been waived, the Kentucky Court of Appeals has ruled that "[o]fficers and directors owe fiduciary duties to the corporation, not the shareholders." *Gross v. Adcomm, Inc.*, 478 S.W.3d 396, 400 (Ky. Ct. App. 2015).  Thus, the statutes cited by Appellant do not appear to create a technical trust or a fiduciary duty between shareholders.

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

> (5) for a domestic support obligation[.]

11 U.S.C. § 523(a)(5).  Section 101(14A) defines a "domestic support obligation" as:

[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –

> (A)  owed to or recoverable by – (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit;
>
> (B)  in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent . . . ;
>
> (C)  established . . . [by] a separation agreement, divorce decree, or property settlement agreement; [or] an order of the court of record; . . . and
>
> (D)  not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A)(A)–(D).

In its first opinion, the bankruptcy court held that the complaint and attached documents (including the state court divorce decree)[16] "lack factual allegations which, if taken as true, would plausibly support a finding that (1) the 'state court or parties intended to create a support obligation' or (2) '[this] debt has 'the actual effect of providing necessary support.'" (September 26, 2022 Op. at 5.)  The bankruptcy court noted that the divorce decree awarded Rebecca monthly maintenance payments of $250, separate from the $160,000 Judgment.  The bankruptcy court also noted that the $160,000 Judgment was "not labeled . . . as a support obligation" and "does not make this debt contingent upon any subsequent events." (*Id.* at 5.)  Finally, the bankruptcy court

---

[16]The bankruptcy court noted that Rebecca's original complaint attached several documents that were incorporated into the complaint by reference and considered those documents in evaluating the motions before it. (Sept. 26, 2022 Op. at 2 n.1.)

considered the state court's statement that the business supported the parties during their marriage but rejected that statement as an indication that the state court intended for the "$160,000 Judgment" to be in the nature of support. (*Id.*)

The bankruptcy court's initial decision correctly recognized that the determination of whether an award in a divorce decree is in the nature of support is not solely dependent on the terminology used by the state court.

> In *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103, 1109-10 (6th Cir. 1983), the Sixth Circuit enunciated a four-part analysis for making the determination whether an obligation that was not specifically designated as alimony or maintenance was actually in the nature of support, and thus, nondischargeable. As subsequently re-stated in *Fitzgerald*:
>
>> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.
>
> *Fitzgerald v. Fitzgerald* (*In re Fitzgerald*), 9 F.3d 517, 520 (6th Cir. 1993) (citing *Calhoun*, 715 F.2d at 1109-10). "The burden of demonstrating that an obligation is in the nature of support is on the non-debtor." *Fitzgerald*, 9 F.3d at 520 (citing *Calhoun*, 715 F.2d at 1111).

*In re Thomas*, 511 B.R. 89, 95 (B.A.P. 6th Cir. 2014), *aff'd*, 591 F. App'x 443 (6th Cir. 2015), *cited in* Sept. 26, 2022 Op. at 4-5.

After the BAP vacated the bankruptcy court's dismissal of the § 523(a)(5) claim under Federal Rule of Civil Procedure 12(c), the bankruptcy court held a trial to allow Rebecca to present evidence that the state court judge intended to create a domestic support obligation in awarding Rebecca the $160,000 Judgment. Appellant argues that under Kentucky Revised Statutes section 403.200, Kentucky law required the bankruptcy court to consider all property and monetary awards in determining separate maintenance; *ergo*, any property or monetary awards are by their nature also support awards. (Appellant's Br. at 16 ("The Family Court Judge **was required by law** to

treat the amount of $205,000.00 to be used for the Wife's support, and to reduce other maintenance." (emphasis in original)).)

A. <u>The bankruptcy court did not abuse its discretion by refusing to admit into evidence the state court judge's deposition.</u>

After remand, Rebecca took deposition testimony from the state court judge, Hon. David Flatt, attempting to further support her argument that the amount awarded for her interest in the business was intended to be a support obligation. (Tendered Dep., Adv. P. 22-01001, ECF No. 126-1.) Appellant asserts that "Judge Flatt's deposition was not taken [or] tendered in an attempt to alter or change the divorce judgment. Rather his deposition was taken to clarify the intent and purpose of said judgment and the specific provisions therein." (Appellant's Br. at 17.) The bankruptcy court, however, sustained Debtor's objection to the admission of Judge Flatt's deposition testimony on parol evidence and relevance grounds. This evidentiary ruling is reviewed for an abuse of discretion. *Graf v. Morristown-Hamblen Hosp. Ass'n*, 155 F.4th 578, 588 (6th Cir. 2025).

The bankruptcy court noted that Kentucky courts only use parol evidence to interpret a writing in limited circumstances, including when ambiguity exists. (Sept. 2024 Mem. Op. at 22.) The bankruptcy court, however, found no ambiguity in the language of the divorce decree, noting that Rebecca "did not argue the Divorce Decree is ambiguous, while [Debtor] contended it was unambiguous." (*Id.* at 23.) Moreover, the bankruptcy court found that Rebecca had not explained "how Judge Flatt's testimony clarified or provided context or meaning to any specific term in the Divorce Decree." (*Id.*) Finally, the bankruptcy court stated that Rebecca "did not argue the Divorce Decree is not a fully integrated instrument or that Judge Flatt's testimony offered an additional, consistent term to the Divorce Decree." (*Id.*) As a result, the bankruptcy court sustained Debtor's objection to admission of the deposition testimony based on the parol evidence rule. (*Id.* at 23-24.)

On appeal, Appellant argues that the divorce decree is incomplete because it "was not intended to address issues of federal bankruptcy law." (Appellant's Br. at 18.) Appellant correctly asserts that "[t]he document was simply intended to address a division of property and allocation of assets under Kentucky divorce law." (*Id.*) But nondischargeability under the Bankruptcy Code

is based on the nature of the debt created by the state divorce judgment so that the state court did not need to "address issues of federal bankruptcy law."

Whether an award is a "spousal support" under § 523(a)(5) is based on the nature of the award as determined by the state court. Accordingly, Appellant's argument on appeal that the divorce decree is incomplete fails. Moreover, Appellant appears not to have raised this argument to the bankruptcy court at trial. The bankruptcy court expressly noted that Appellant (1) failed to argue that the decree was ambiguous; (2) failed to explain how the deposition testimony "clarified or provided context or meaning to any specific term in the Divorce Decree"; and (3) failed to argue that "the Divorce Decree is not a fully integrated instrument or that [the judge's] testimony offered an additional, consistent term to the Divorce Decree." (Mem. Op. at 23.) As previously noted, "[a]ppellate courts ordinarily do not consider issues raised for the first time on appeal." *In re Nyamusevya*, No. 19-8027, 2021 WL 193965, at *7 (B.A.P. 6th Cir. Jan. 20, 2021) (citations omitted)).

Moreover, Appellant did not explain to the bankruptcy court or this Panel how the state court judge's deposition would demonstrate an intention to treat the $160,000 Judgment as spousal support. Appellant admits that the state divorce decree "parroted and referenced various concepts and terminology from Kentucky divorce statutes" (Appellant's Br. at 18) but does not point to any language in the deposition that would have provided clarification as to the nature of the $160,000 Judgment.[17]

Appellant has not demonstrated an abuse of discretion by the bankruptcy court in excluding the state court judge's deposition testimony. The bankruptcy court's evidentiary ruling is AFFIRMED.

---

[17]In the tendered deposition, the state court judge merely agrees that he followed Kentucky law, which required him to consider the amount of property or assets awarded as part of a determination as to maintenance payments. He answered "yes" to the question: "in setting the amount of maintenance by considering the fact that [Rebecca] would have this $205,000 to apply to her support and reasonable needs, that's really to his benefit because it results in a lower maintenance; is that fair?" (Tendered Dep. at 12:5-11.)

B. The bankruptcy court's factual findings were not clearly erroneous.

Appellant argues that the state court judge "awarded a nominal sum of maintenance in this case . . . no doubt because, although[] surely the trial judge realized that [Rebecca] could not survive and meet her basic needs with Two Hundred Fifty dollars ($250.00) per month, the Family Court intended the award of $205,000.00 to be used for her maintenance and support[.]" (Appellant's Br. at 16.)  Appellant also argues that Kentucky Revised Statutes section 403.200 required the Family Court Judge to consider property awarded in a divorce decree in allocating maintenance and support.  Appellant's argument conflates a property settlement with support; she asserts, without any foundation, that some part of a property settlement must be treated as support because if it were not awarded, the maintenance award would be higher.  However, a reduced support obligation alone does not convert property distribution into a support obligation.

The bankruptcy court's ruling noted that Rebecca did not attempt to address at trial any of her economic or personal circumstances or how those circumstances bore on the property and maintenance obligations in the divorce decree.  (Sept. 2024 Mem. Op. at 25.)  Rebecca "offered no evidence of what the family court knew about these identified considerations when calculating the maintenance payment."[18]  (*Id*.)  The bankruptcy court thoroughly explained what Rebecca might have done to meet her burden:

> More specifically, [Rebecca] did not introduce evidence about [her] and [Debtor's] respective education, professional training, or work skills and abilities, other than that [Debtor] operated Tri-State and [Rebecca] did not.  [Rebecca] did not offer evidence of any property or other financial resources in [her] or [Debtor's] possession before the divorce was filed, during the divorce proceedings, or post-divorce; thus, for example, this Court has no way to assess the import of the family court's award to [Rebecca] in the Divorce Decree of "all of the furnishing in the marital residence and all other personalty of the Parties."  [Rebecca] presented no evidence about the value of the three parcels of real property noted in the Divorce Decree, including the 155.5 acre parcel awarded to [her] and the 20 acre parcel

---

[18]The considerations identified in the divorce decree include: "financial resources of [Plaintiff], including the martial [sic] property apportioned to her, and her ability to meet her needs independently, the time necessary to acquire sufficient education or training to enable [her] to find appropriate employment, the standard of living established during the marriage, the duration of the marriage, the age and the physical and emotion condition of [Plaintiff], and the ability of [Defendant] to meet his needs while meeting those of the spouse seeking maintenance." (*Id.* (quoting the divorce decree).)  Notably, the excluded deposition testimony of the state court judge also did not address these considerations.  (*See generally* Depo. of David Flatt, Adv. P. No. 22-01001, ECF No. 126-1.)

ordered to be sold with the proceeds to be split between the parties. [Rebecca] provided no proof of her income, expenses, or standard of living, at any time before or after [she] and [Debtor] stopped cohabiting and their divorce proceedings began. Thus, [Rebecca] did not offer sufficient evidence to explain the disparity of earning power between [her] and [Debtor], her need for economic support and stability, and whether the lump sum awards pertaining to their joint business would have had the actual effect of providing necessary support to [Rebecca].

(*Id*. at 26 (citations omitted).)

On appeal, Appellant has failed to contradict the bankruptcy court's conclusions about the dearth of evidence. Instead, Appellant asserts that because Kentucky law requires consideration of property awarded before maintenance is awarded, the property distribution award must be for support, at least in part. (Appellant's Br. at 16.) Without evidence, however, the bankruptcy court was unable to determine what, if any, part of the property award might have been necessary for Rebecca's support. The Panel finds no clear error in the bankruptcy court's determination. Rebecca simply failed to carry her burden of proof. Accordingly, the bankruptcy court's determination that Rebecca did not prove that the debt was a support obligation is AFFIRMED.

**Case No. 25-8002**

**I. <u>Relief from the Automatic Stay</u>**

In the second appeal, Appellant argues that the bankruptcy court erred in overruling and denying her motion for relief from stay to carry out setoff. Specifically, Appellant argues that there is a presumption of setoff and that there was no assertion or suggestion that any other creditor would be prejudiced by Appellant's claim of setoff. (Appellant's Br. at 19-20.)

The bankruptcy court's factual findings are reviewed for clear error and its legal conclusions de novo. The bankruptcy court's decision to deny relief from the automatic stay is reviewed only for an abuse of discretion. *See Baxter v. Sarmadi*, 602 F. App'x 322, 324 (6th Cir. 2015).

Under 11 U.S.C. § 362(d)(1) a party in interest may obtain relief from stay by showing "cause," including the lack of adequate protection in property of such a party in interest. "Cause" for relief from stay is not defined by § 362(d)(1). Therefore, "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co.* (*In re*

*Laguna Assocs. Ltd. P'ship*), 30 F.3d 734, 737 (6th Cir. 1994) (citing *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1129 (6th Cir. 1991)).

*State Bank of Florence v. Miller* (*In re Miller*), 459 B.R. 657, 676 (B.A.P. 6th Cir. 2011), *aff'd*, 513 F. App'x 566 (6th Cir. 2013).

Appellant's motion for relief from the automatic stay sought relief to take two actions. First, the stay relief motion sought an adjustment of Debtor's domestic support obligation.[19] Second, the motion sought to pursue any setoff rights she may have by taking possession of real property deeded in her name but which Debtor uses as his residence, located at 631 Wampler Branch, Greenup, Kentucky (the "Property"). Regarding the request to pursue setoff, Rebecca argued that a right to setoff existed, citing cases in which the right to setoff exists, but she did not explain why she was entitled to relief from the stay. The bankruptcy court noted that the motion did not discuss § 362(d). (Order Denying Relief at 3, Case No. 22-10013, ECF No. 177.) Appellant fails to address this conclusion in her appellate brief. Instead, Appellant focuses on her arguments that a right to setoff exists, without pointing the Panel to where she explained why she was entitled to stay relief.

As the BAP has previously explained secured creditors are not entitled to relief from the stay simply by virtue of their secured status, without demonstrating that cause for relief from the automatic stay exists.

> In support of its motion, the IRS argues that the mere existence of its right to setoff tax overpayments against tax liabilities, 26 U.S.C. § 6402(a), which is preserved in bankruptcy cases under § 553(a), constitutes cause for relief from stay under § 362(d)(1). *See, e.g., In re Whitaker*, 173 B.R. 359 (Bankr. S.D. Ohio 1994); *United States v. Orlinski* (*In re Orlinski*), 140 B.R. 600, 604 (Bankr. S.D. Ga. 1991) (both granting postconfirmation relief from stay to permit the exercise of setoff rights). *But cf. United States v. Johnson* (*In re Johnson*), 136 B.R. 306 (Bankr. M.D. Ga. 1991) (confirmed plan precludes IRS from exercising setoff right so long as IRS is adequately protected). However, notwithstanding reported decisions that have accepted the IRS's argument, **the proposition that the mere existence of a right to setoff is cause for relief from stay is a tenuous one at best**. As noted by the bankruptcy court, "[s]etoff, in effect, elevates an unsecured claim to secured

---

[19]As to the first request for relief, the bankruptcy court found that it need not modify the stay because there is an express exception to the automatic stay which applies to the requested relief. *See* 11 U.S.C. § 362(b)(2)(A)(ii). Appellant does not challenge this conclusion.

status." *Univ. Med. Ctr. v. Sullivan* (*In re Univ. Med. Ctr.*), 973 F.2d 1065, 1079 (3d Cir. 1992) (citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)); *see* 11 U.S.C. § 506(a). **Yet secured creditors are not entitled to relief from stay simply by virtue of their secured status. They still must demonstrate cause to lift the stay.**

*I.R.S. v. Shultz* (*In re Shultz*), No. 05-8038, 2006 WL 1407466, at *4, 347 B.R. 115 (Table) (B.A.P. 6th Cir. 2006) (emphases added). Therefore, even if Appellant could prove that a right to setoff exists, she still has not carried her burden of proving that the bankruptcy court erred in denying relief from stay because she needs to show more than a right to setoff – she needs to show that there is cause for relief from the stay. The bankruptcy court's Order Denying Relief from the Stay is AFFIRMED.

## II. Rebecca's Claim to Setoff

### A. The bankruptcy court did not err in ruling that Rebecca failed to prove that setoff is appropriate.

Addressing the focus of Appellant's argument concerning setoff, she simply did not prove that she has a right to set off debt against property. The bankruptcy court found that Appellant "simply declares she is entitled to this relief. She failed to provide a developed legal argument as to either (a) the standard applicable to motions to modify the automatic stay, or (b) the existence of her setoff right under nonbankruptcy law." (Order Denying Relief at 2, Case No. 22-10013, ECF No. 177.)

In her appellate brief, Appellant points to the transcript from the December 11, 2024 hearing on the motion for relief from stay. (Appellant's Br. at 19.) Appellant notes that she cited several cases to the bankruptcy court and that Debtor conceded that a right to setoff exists under Kentucky law. (*Id.*) To the bankruptcy court and on appeal, Appellant argues that there is a presumption in favor of allowing setoff and that it should be liberally allowed.

> Section 553 states that "this title does not affect any right of a creditor to offset a *mutual* debt owing by such creditor to the debtor that arose *before the commencement of the case* under this title against a claim of such creditor against the debtor that arose *before the commencement of the case* . . . ." According to this provision, a creditor can offset its losses against its profits when the creditor and debtor have mutual, pre-petition obligations.

*Ky. Cent. Ins. Co. v. Brown* (*In re Larbar Corp.*)*,* 177 F.3d 439, 445 (6th Cir. 1999) (alteration in original).

> A setoff is defined as "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." *Black's Law Dictionary* 1496 (9th ed. 2009). It "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S. Ct. 806, 808 (1913)). The right of setoff is recognized by 11 U.S.C. § 553[.]

*In re Miller*, 459 B.R. at 675 (citation modified).

Appellant points to cases that she asserts hold that setoff should be liberally applied. (Appellant's Br. at 19.) Appellant, however, does not explain how those cases apply here; she does not explain the factual patterns or the legal conclusions of those cases or how they relate to the present case. The only legal point she attempts to argue in her approximately two pages of argument is that a setoff in this case would not prejudice other third-party creditors because she is the "only creditor who is significantly affected by this Bankruptcy at all." (Appellant's Br. at 20.) She simply does not develop her argument.

Appellant failed to explain to the bankruptcy court – nor does she attempt to explain to this Panel – how her obligation to sign the deed over to Debtor as required by the divorce decree is a mutual obligation of debt, juxtaposed with Debtor's requirement to pay her the $160,000 Judgment awarded in the divorce decree. Instead, Appellant relies heavily on the concurrence by Judge Dales in the BAP's prior opinion; however, nothing in that concurring opinion establishes that Appellant is entitled to a setoff. First, Judge Dales's concurrence specifically acknowledges that it is dicta. *Bailey v. Bailey* (*In re Bailey*), No. 23-8001, 2024 WL 1511984, at *19 (B.A.P. 6th Cir. Apr. 8, 2024) (Dales, J., concurring) ("I join the balance of the Panel's decision but write separately to offer observations (admittedly in *dicta*) that have no place in the main opinion."). Moreover, on remand, a concurring opinion is not binding on the bankruptcy court. *See Frasier v. Evans*, 992 F.3d 1003, 1017 (10th Cir. 2021) (citation omitted) ("[A] concurring opinion is not binding on us'—even one from a Supreme Court Justice—and, therefore, such an opinion is relevant only insofar as its analysis is 'persuasive.")); *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013)

("Justices who join the majority may of course express additional thoughts in a concurrence, but concurrences do not bind lower courts in cases where there is a majority opinion.") (Kavanaugh, J., concurring).

Regardless of the deficiency of Appellant's arguments on appeal, the bankruptcy court did not err in holding that Appellant did not establish that she has a right to setoff under non-bankruptcy law.  The bankruptcy court correctly held that Appellant not only failed to demonstrate a right to setoff, but also failed to offer a sufficient factual basis to show why the bankruptcy court should exercise its discretion to allow a setoff under the relevant circumstances.  (*See* Order Denying Relief at 6.)  The bankruptcy court noted that, under the Confirmed Plan, Appellant retains her lien against the Property and will receive nearly $110,000 through the Plan.  (*Id.*)  In a footnote, the bankruptcy court also noted that "[w]hile [Rebecca] failed to show she has a valid right of setoff, if later she can establish a legal and factual basis under which such a right exists, § 553 will protect it." (*Id*. at 6 n.2.)  The bankruptcy court's order regarding setoff is AFFIRMED.

B.  <u>The bankruptcy court did not rule that the Confirmed Plan precluded any right to setoff.</u>

Appellant asserts that the bankruptcy court erred in finding that confirmation of the chapter 13 plan prevented or superseded the right to setoff, listing the following issues:

- The Honorable Trial Court erred in finding that set off could not be allowed after confirmation and therefore denying the Appellant set off.

- The Honorable Trial Court erred in finding and holding that confirmation of a proposed plan prevented the Court from granting relief from the stay for purpose of set off especially when the confirmation order was not final, as a timely motion pursuant to Rule 59 had been filed, with regard to the order confirming plan.

- The Honorable Trial Court erred in ruling that the Appellant's statutory rights to set off could be prevented or superseded by a provision of the debtor's proposed plan.

(Appellant's Br. at 1-2.)

Appellant's characterization of the bankruptcy court's ruling is misleading.  The bankruptcy court did not hold that the right to setoff was superseded by plan confirmation, nor did

the bankruptcy court hold that the setoff was barred by plan confirmation. Rather, as discussed *supra*, the bankruptcy court specifically noted that even following plan confirmation, if Rebecca could establish a legal and factual basis under which such a setoff right exists, § 553 will protect it. (Order Denying Relief at 6 n.2.)

### III. Appeal of the Confirmation Order and Motion to Reconsider or Modify the Confirmation Order

Although Appellant's notice of appeal identifies the Agreed Order Confirming Chapter 13 Plan (Case No. 22-10013, ECF No. 161) and the Order Denying Motion to Amend Judgment (Case No. 22-10013, ECF No. 178) as orders being appealed, Appellant's brief does not mention, discuss, or develop any arguments regarding either. Neither the brief nor the reply brief mentions the standards applicable to either plan confirmation or to amend a judgment under Rule 9023. Accordingly, those issues are waived on appeal.

### IV. Appeal of the Order Requiring Rebecca to Execute a Deed to Debtor

Finally, Appellant argues that the bankruptcy court erred in its Order Denying Relief by requiring Rebecca to execute a deed to convey the Property to Debtor as required by the divorce decree and in compliance with the confirmed plan. The bankruptcy court explained that Rebecca's response to Debtor's motion to compel her to transfer the Property in compliance with the confirmed plan "offer[ed] neither legal authority nor any reasoned analysis to establish she does not have to comply with the Plan and Confirmation Order." (Order Denying Relief at 7, Case No. 22-10013-dll, ECF No. 177.) Because Rebecca had not shown she was entitled to stay relief and could not rely on any right to setoff to justify her refusal to execute the deed, the bankruptcy court granted Debtor's motion to compel. (*Id.*) The bankruptcy court also pointed to the confirmed plan as grounds to require Rebecca to execute the deed.[20] (*Id.* (citing 11 U.S.C. § 1327; *In re Crady*, No. 05-54401, 2006 WL 3876503, at *3 (Bankr. E.D. Ky. July 14, 2006) (citing *Salt Creek Valley Bank v. Wellman* (*In re Wellman*), 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004))).)

---

[20]*See also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S. Ct. 1367, 1380 (2010) (finding a confirmation order "enforceable and binding" on a creditor notwithstanding legal error when the creditor "had notice of the error and failed to object or timely appeal").

Appellant's sole argument on appeal on this issue is that Rebecca was entitled to offset the Property against the debt owed by Debtor to Rebecca.  (Appellant's Br. at 28.)  Because Appellant has failed to show that any mutual debt existed for setoff, as explained above, the bankruptcy court's order requiring Rebecca to execute the deed is AFFIRMED.

**CONCLUSION**

Appellant did not develop legal arguments to support many of her issues raised on appeal. This followed a similar failure in the bankruptcy court, where she made conclusory arguments that were unsupported by either factual development or legal reasoning.  It is well established that the Panel does not rule on issues that were not properly addressed to the trial court and those which are not properly raised on appeal.

> "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (alteration in original) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

*Est. of Barnwell v. Grigsby*, 801 F. App'x 354, 372 (6th Cir. 2020); *see also In re Prather*, No. 18-8037, 2019 WL 3714971, at *4 (B.A.P. 6th Cir. Aug. 7, 2019) ("To evaluate an argument on the merits concerning the [issues] would require the Panel to create that argument for Debtor out of whole cloth.  The Panel will not engage in that exercise.")

Having fully reviewed Appellant's briefs and the arguments presented, the Panel finds no error.  The bankruptcy court orders listed in both notices of appeal are AFFIRMED.